1  Summer H. Murshid, Wis. Bar No. 1075404
2  Larry A. Johnson, Wis. Bar No. 1056619
   Timothy P. Maynard, Wis. Bar No. 1080953
3  **Hawks Quindel, S.C.**
   222 E. Erie Street, Suite 210
4  Milwaukee, WI 53201-0442
5  Telephone:   (414) 271-8650
   Facsimile:   (414) 271-8442
6  Email(s):    smurshid@hq-law.com
                 ljohnson@hq-law.com
7                tmaynard@hq-law.com
8
   Attorneys for Plaintiffs
9

10

11              **IN THE UNITED STATES DISTRICT COURT**

12                **FOR THE DISTRICT OF ARIZONA**

13

14                                                  Case No.:   2:17-cv-00265-JJT
   Anthony Johnson, individually and on
15
    behalf of all others similarly situated,
16
                        Plaintiff,
                                                    **JOINT MOTION FOR FINAL**
17                                                  **APPROVAL OF COLLECTIVE**
   v.                                               **ACTION SETTLEMENT AND**
18                                                  **SUPPORTING MEMORANDUM**
   NEA Delivery, LLC,
19
                        Defendant.
20

21        Plaintiff Anthony Johnson, individually and on behalf of the Opt-In Plaintiffs, by and

22  through their attorneys, Hawks Quindel, S.C., by Larry Johnson, Summer H. Murshid, and

23  Timothy P. Maynard, and Defendant NEA Delivery, LLC ("Defendant"), by and through its

24  attorneys Gonzalez Law, LLC, by Dinita L. James, submit this Joint Motion for Final

25  Approval of Collective Action Settlement. Plaintiff and Defendant (the "Parties") reached a

26  settlement in this Fair Labor Standards Act ("FLSA") case on July 21, 2017, which was

27  preliminarily approved by the Court on September 11, 2017. (Doc. 28.) In accordance with

28  the Court's Order preliminarily approving the settlement, the Parties respectfully move the

1   Court for an order finally approving the Settlement Agreement (Doc. 27-1) as a fair,

2   reasonable, and adequate resolution of a bona fide dispute under the FLSA, approving the

3   releases by which Plaintiff and the Opt-In Plaintiffs waive wage and hour claims in

4   consideration of the settlement payments to be made by Defendant (Doc. 27-4),  and

5   directing the clerk to enter judgment dismissing this action with prejudice.

6                                     **MEMORANDUM IN SUPPORT**

7           The Parties filed their Joint Motion for Preliminary Approval of Collective Action

8   Settlement and supporting documents in this matter on August 25, 2017. (Doc. 27.)  On

9   September 11, 2017, the Court preliminarily approved the Parties' Settlement Agreement

10  and ordered that the Parties submit a motion for final approval of the settlement within thirty

11  days of the close of the Opt-in Period for the FLSA collective class. (Doc. 28.)

12  **I.       RELEVANT FACTS.**

13          Plaintiff Anthony Johnson brought this action on January 27, 2017 on behalf of

14  himself and all other, similarly situated delivery drivers who worked for Defendant NEA

15  Delivery, LLC ("NEA Delivery"), asserting violations of the FLSA's overtime provisions.

16  In his complaint, Plaintiff Johnson alleges that NEA Delivery violated the FLSA's overtime

17  provisions by failing to pay him and other employees for certain hours performing pre-shift

18  and post-shift tasks that were integral and indispensable to their jobs as delivery drivers, such

19  as time spent picking up vehicles or packages prior to the recorded start of their shifts. (Doc.

20  1.) Defendant denied violating the FLSA when it answered Plaintiffs' complaint on April 21,

21  2017. (Doc. 14.)

22          Shortly thereafter, counsel for the Parties began discussing the possibility for early

23  resolution of this matter. (Declaration of Attorney Summer H. Murshid ("Murshid Dec."),

24  Doc. 56, ¶ 2; Declaration of Attorney Dinita L. James, "James Dec."), Doc. 55, ¶ 6.)

25  Through an informal exchange of information obtained from their respective factual

26  investigations, counsel for the parties determined that there were factual disputes regarding

27  NEA Delivery's timekeeping practices in its Phoenix route delivery operations and whether

28  the practices had captured all compensable time worked at the beginning and end of the

1  delivery drivers' workdays.  (James Dec., Doc. 55, ¶¶ 3, 6-8.)  Through counsel's informal

2  exchange of information, they identified the relevant time period in dispute as between the

3  beginning of NEA Delivery's Phoenix route delivery operations on February 3, 2016 and the

4  installation of an electronic time clock at the beginning of July 2016.  (James Dec., Doc. 55,

5  ¶ 8.)   To facilitate those discussions, defense counsel provided Plaintiff's counsel with

6  contact and job history information and available payroll records for Plaintiff Johnson and

7  the employees in its Phoenix route delivery operation for the period from February 3, 2016

8  through August 5, 2016.  (James Dec., Doc. 55, ¶ 10.) Defense counsel also disclosed to

9  Plaintiff's counsel that NEA Delivery did not have full access to its personnel and

10  timekeeping records because of an ongoing, unrelated dispute with the professional employer

11  organization ("PEO") with whom it had contracted for human resources management

12  services during the relevant time period.  (James Dec., Doc. 55, ¶¶ 4, 7; Murshid Dec., Doc.

13  56, ¶ 3.)

14       Based on their discussions with Plaintiff Johnson and the other, initial opt-ins,

15  Plaintiffs' counsel then analyzed the data and created a model to extrapolate a class-wide

16  damages estimate, inclusive of liquidated damages. (Murshid Dec., Doc. 56, ¶ 4.) The Parties

17  then engaged in good faith settlement negotiations over the damages model based on varying

18  factors. (Murshid Dec., Doc. 56, ¶ 5; James Dec., Doc. 55, ¶ 11.)

19       After more than two months of negotiations, the Parties reached a settlement in

20  principle in July 2017, agreeing on the settlement damages model that determined the

21  payments to be offered to each member of the collective action class and separately agreeing

22  on Plaintiff's attorneys' fees and costs to be paid by Defendant apart from the recovery to be

23  offered to the class. (Murshid Dec., Doc. 56, ¶ 6; James Dec., Doc. 55, ¶ 12.)

24       The key assumption of the settlement damages model is the allocation of one hour of

25  additional overtime pay per day worked in workweeks with overtime.  (James Dec., Doc. 55,

26  ¶ 15.)  That assumption reflects a reasonable compromise of the key disputed factual issue in

27  the case, in which NEA Delivery's factual investigation indicated that the amount of

28  uncompensated time per day likely ranged from a low of zero to a high of 45 minutes, and

1  Plaintiff's counsel's investigation indicated the amount of uncompensated time per day

2  ranged from 45 minutes to 1.5 hours.  (James Dec., Doc. 55, ¶ 15; Murshid Dec., Doc. 56,

3  ¶ 7.)

4       The damages model to which the Parties agreed identified all workweeks in which

5  each class member worked more than 40 hours.  For all such workweeks identified, the

6  model allocated one additional hour of pay for each day worked in that workweek.  The

7  model assigned pay for each additional allocated hour at the overtime rate previously

8  calculated by NEA Delivery for that class member for that workweek.  The model totaled the

9  additional overtime pay allocated to each class member and then allocated an equivalent

10  additional amount as liquidated damages.  For those settlement class members for whom the

11  model allocated zero additional overtime compensation, NEA Delivery agreed to offer those

12  class members $25 in additional overtime pay and $25 in liquidated damages as

13  consideration for their release of wage and hour claims.  Thus, the amounts offered to each

14  class member in settlement depended on the actual hours, days and workweeks that

15  individual worked as a delivery driver during the time at issue and thereby tied directly into

16  the alleged facts of the FLSA violations asserted in the complaint. (James Dec., Doc. 55,

17  ¶ 16; Murshid Dec., Doc. 56, ¶ 8.)

18       The Parties' counsel continued to finalize the settlement terms and conditions before

19  filing their joint motion for preliminary approval of the settlement on August 25, 2017.

20  (Murshid Dec., Doc. 56, ¶ 9; James Dec., Doc. 55, ¶ 13.)

21       After the Court preliminarily approved the settlement agreement, Plaintiff's counsel

22  sent notice of the settlement and consent form to the putative class members on September

23  12, 2017, to the 109 individuals listed on the Allocation, (ECF DKT No. 27-5) in accordance

24  with the Court's order. (Murshid Dec., Doc. 56, ¶ 10.) During the Opt-in period, Plaintiff's

25  counsel received 23 returned, undeliverable notices, performed a skip trace and resent the

26  returned notices. (Murshid Dec., Doc. 56, ¶ 11.) Over the course of the Notice period, 67

27  individual class members returned signed consents to assert their FLSA claims as part of this

28

1  collective action and take part in the settlement. (Docs. 29-51.) This represents a 61% rate of

2  return. (Murshid Dec., Doc. 56, ¶ 12.)

3       The Court's Order granting preliminary approval required that class members who

4  wanted to participate in the settlement "sign and file" Consent to Join forms within 30 days

5  of the distribution date of the class notice.  (Doc. 28, ¶ 7.)  Based on the date the notice was

6  distributed, the filing deadline was October 12, 2017.  However, the Court-approved notice

7  only instructed class members to "complete and return" the consent form to Plaintiff's

8  counsel by the deadline.  (Murshid Dec. 13, Ex. A, Doc. 56-1.) Thus, the Parties agree that

9  all 67 of the class members who signed consent to join forms on or before October 12, 2017

10  and returned them to Plaintiff's counsel should be allowed to participate in the settlement,

11  even though a few of the consent forms (Doc. 51) were not filed with the Court by October

12  12, 2017.  Thus, the Parties seek Court approval of a settlement with 67 members of the

13  collective action class receiving gross payments for back wages totaling $21,077.64 and an

14  additional $21,077.64 in payments for liquidated damages (Murshid Dec., Doc. 56, ¶ 14.)

15  **II.  APPLICABLE LEGAL STANDARD.**

16       Most district courts in the Ninth Circuit evaluate a proposed FLSA collective action

17  settlement under a standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v.*

18  *United States,* 679 F.2d 1350, 1352-53, 1355 (11th Cir. 1982), which requires the settlement

19  to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."

20  This Court cited to *Lynn's Food* in its Order (Doc. 24) entered upon the Parties' filing of a

21  Notice of Settlement (Doc. 23), directing the filing of a joint motion for approval of their

22  Settlement Agreement.

23       The fairness determination required by the FLSA and *Lynn's Food* is distinct and

24  specific to FLSA collective actions.

25       The Court's single obligation—to ensure that the settlement is "fair"—can
be contrasted with the Court's obligation to oversee traditional class
26  settlements under Rule 23, which requires, among other things, a hearing
on the fairness, reasonableness, and adequacy of the settlement, and an
27  opportunity for class members to object to the settlement. These
obligations, which are outlined in Federal Rule 23(e), do not apply to
28  settlements of FLSA collective actions.

1  *Armes v. Hot Pizzas*, No. 2:16-cv-01152-PHX-JJT, 2017 U.S. Dist. LEXIS 89920, at *4, n.1

2  (D. Ariz. June 9, 2017).  Courts consider multiple factors in making the fairness analysis for

3  a collective action settlement, including:

4  > (1) the stage of the litigation and the amount of discovery exchanged, (2)
> the experience of counsel, (3) the probability of the plaintiffs' success on

5  > the merits, (4) any overreaching by the employer in the settlement
> negotiations, and (5) whether the settlement is the product of arm's length

6  > negotiations between represented parties based on the merits of the case.

7  *Id.* at *6-7 (citing *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D.

8  Cal. 2016) (collecting cases); *Fontes v. Drywood Plus, Inc.*, 2:13-cv-1901-PHX-LOA, 2013

9  U.S. Dist. LEXIS 169720, at *6 (D. Ariz. Dec. 2, 2013)).

10  ### III.   ARGUMENT

11  The settlement before the Court resolves the Parties' bona fide disputes under the

12  FLSA regarding uncompensated overtime hours allegedly worked by NEA Delivery's route

13  delivery drivers based out of its Arizona facility during its first few months of operation from

14  February 3, 2016 through July 2, 2016.  The settlement is a fair and reasonable resolution of

15  that dispute when considering all of the factors to be weighed. The Court should grant final

16  approval of this collective action settlement with full confidence that it has met its single

17  obligation to ensure that it is fair.

18  **A. The settlement resolves a bona fide dispute under the FLSA.**

19  A bona fide dispute exists in an FLSA matter where the parties disagree over issues

20  that may have an effect on the outcome of the case through continued litigation. *See Lynn's*

21  *Food*, 679 F.2d at 1354 ("If a settlement in an employee FLSA suit does reflect a reasonable

22  compromise over issues, such as FLSA coverage or computation of back wages, that are

23  actually in dispute; we allow the district court to approve the settlement in order to promote

24  the policy of encouraging settlement of litigation."). In this case, such disputes exist.  The

25  Parties dispute whether Plaintiff and similarly situated delivery drivers worked overtime

26  hours for which they have not been compensated during NEA Delivery's first five months of

27  operation in Arizona.  The facts regarding NEA Delivery's timekeeping practices are in

28  dispute, and also in dispute is the amount of time that even potentially was not captured for

1  compensation by those timekeeping practices, with NEA Delivery asserting that the range

2  was zero to 45 minutes and Plaintiff asserting the range was 45 minutes to an hour and a

3  half.  (James Dec., Doc. 55, ¶ 15.)  NEA Delivery has also asserted the defense that any

4  uncompensated overtime was *de minimis*.  (Doc. 14, p. 8.) Accordingly, the Parties

5  negotiated a good-faith compromise of the potential value of the claims in resolving this

6  matter, agreeing for settlement purposes to a settlement model that allocates to class

7  members one additional hour of overtime per day worked in workweeks with overtime.

8  There is no question in this case that a bona fide dispute exists, satisfying the first

9  requirement for the Court to approve an FLSA settlement.

10     **B.  The settlement is fair and reasonable.**

11          In addition to resolving bona fide FLSA disputes, the Parties' settlement is the fair

12  and reasonable result of good-faith, arms-length negotiations by experienced counsel and

13  does not raise any concerns weighing against final approval.

14                    **a.  The settlement was well-informed by an adequate informal exchange of information and payroll data.**

15

16          While this matter was resolved early in the litigation, the resolution was based on the

17  exchange of available relevant payroll data for the entire class, and disclosure by defense

18  counsel of the limits of the available data and why.  (James Dec., Doc. 55, ¶¶ 4, 7-10.) That

19  data disclosure and consultation with the Named Plaintiff and initial opt-in plaintiffs allowed

20  Plaintiff's counsel to make good-faith estimates regarding the allegedly uncompensated time

21  at issue and extrapolate it on a class-wide basis so that the settlement amounts offered to

22  each class member were based on their respective work records in the statutory period.

23  (Murshid Dec., Doc. 56, ¶ 15) Plaintiff's counsel has represented that the informal exchange

24  of information and payroll data was more than adequate to allow them to engage in informed

25  settlement negotiations.  (Murshid Dec., Doc. 56, ¶ 16.)  Plaintiff's counsel avers that this

26  approach minimized the Parties' attorneys' fees and costs incurred and allowed them to get a

27  fair valuation of the claims at an early stage before such fees and costs inhibited settlement

28  discussions.   (Murshid Dec., Doc. 56, ¶ 17.)

1   The settlement amounts offered to each class member depended on the actual hours,

2   days and workweeks that individual worked as a delivery driver during the time at issue and

3   thereby tied directly into the alleged facts of the FLSA violations asserted in the complaint.

4   (James Dec., Doc. 55, ¶ 17.)  The settlement reflects a fair, reasonable, and efficient

5   resolution of the FLSA collective class claims that minimized the litigation costs for both

6   sides.  The fact that the settlement was reached at an early stage and without formal

7   discovery does not weigh against Court approval in this case.

8           **b.  The Parties were represented by counsel experienced in FLSA matters in
                  reaching a settlement.**
9

10  Plaintiff's counsel has litigated nearly one-hundred FLSA cases on behalf of

11  employees over the last several years. (Murshid Dec., Doc. 56, ¶ 18.) In addition, defense

12  counsel has similar experience in litigating FLSA actions on behalf of employers. (James

13  Dec., Doc. 55, ¶ 2.) The Parties' counsel's collective experience allowed them to avoid

14  prolonged litigation over ancillary and non-dispositive issues so they could focus their efforts

15  on getting a reasonable valuation of the claims based on the available data and then reaching

16  a fair compromise on the actual disputed issues that impacted liability and damages.

17  Accordingly, this factor weighs in favor of final approval of the Parties' settlement.

18          **c.  Plaintiffs' probability for success on the merits weighs in favor of
                  approving the settlement.**
19

20  As set forth above, the Parties dispute both whether there is uncompensated overtime

21  at issue in this matter and, if there is, how much time would be compensable on a daily basis.

22  The resolution of those issues would have required extensive discovery from witnesses

23  beyond the control of either party.  Discovery would have been complicated further by the

24  fact that the dispute with its PEO deprived NEA Delivery of possession, custody or control

25  of much of its own personnel and payroll data.  Thus, the availability of proof to both sides

26  likely was subject to the perils of third-party discovery.  Plaintiff faced considerable

27  obstacles to proving his claims that ultimately could have resulted in no recovery or a lesser

28

1    recovery than negotiated in the settlement. Accordingly, the risks attendant to continued

2    litigation support a finding that the Parties' settlement is fair and reasonable.

3                    **d.  The settlement's terms do not reflect overreaching by the Defendant.**

4            The settlement offered significant monetary relief to the collective action class

5    members, in gross amounts before payroll taxes and other required withholdings ranging

6    from $25.47 to $2002.67.  Through the notice process, 109 collective action class members

7    had an opportunity to say for themselves whether they believed the settlement was fair.  Each

8    class member's notice informed him or her of the specific dollar amount he or she would

9    receive upon opting in.  67 of them, including Plaintiff, decided to accept the settlement, an

10   opt-in rate of 61% percent.  That is a much higher opt-in rate than FLSA collective actions

11   usually get.  *E.g.*, Lonny Hoffman & Christian J. Ward, *The Limits of Comprehensive Peace:*

12   *The Example of the FLSA*, 38 Berkeley J. Emp. & Lab. L. 265, 269-70 & nn. 18-19 (2017)

13   (collecting studies estimating 15-30 percent opt-in rates for typical FLSA collective actions).

14   The high opt-in rate standing alone is sufficient to support a finding that there is no

15   overreach by Defendant in the terms of this settlement.

16           In exchange for accepting the monetary settlement payment, the opt-in plaintiffs only

17   release wage and hour claims against Defendant and related, released parties through the date

18   of final approval. (Doc. 27-1, pp. 9-10.) In addition, opt-in plaintiffs were encouraged to –

19   and many did – contact Plaintiffs' counsel to determine whether they had additional wage

20   and hour claims against the released parties before consenting to join the settlement.

21   (Murshid Dec., Doc. 56, ¶ 19.) Finally, putative collective class members who did not

22   consent to join the settlement will not be bound by the settlement or its release of claims.

23   (Doc. 27-1.)

24           Accordingly, the settlement does not reflect any overreaching by Defendant. The

25   settlement amount for each opt-in plaintiff was negotiated based on the actual hours, days

26   and workweeks that individual worked.  In exchange for that payment, each class member is

27   giving a specific release only of wage and hour claims.  Only those who have received notice

28   of the specific amount offered to that person in settlement and who have consented to join

1   this matter after first having the option to further discuss the settlement with Plaintiff's

2   counsel will be bound by the settlement if it approved.  These terms are appropriate for Court

3   approval and contain no indicia of overreach by Defendant.

4                       **e.   The settlement is the result of arms' length negotiations by the Parties considering the merits of the case.**

5

6          As set forth above in Section III.A., counsel for the Parties efficiently determined the

7   factual and legal disputes that affected the merits of the Plaintiff's claims and negotiated a

8   fair resolution in light of those bona fide disputes. Plaintiff's counsel reviewed the relevant

9   payroll data for all class members to determine the amount of unpaid wages and liquidated

10  damages that was potentially recoverable and developed a damages model that informed the

11  settlement negotiations and resulted in settlement offers directly tied to specific facts

12  regarding each class member's hours, days and workweeks.  The Parties further negotiated a

13  separate amount for Plaintiff's attorneys' fees and costs to resolve the claims. The Parties'

14  settlement talks were ongoing between May and July 2017 – at which point the settlement

15  dollar amounts were agreed upon.  The Parties continued negotiating and fine-tuning the

16  non-monetary terms of the settlement and the procedures for notice to the class and allowing

17  opportunity for well-informed individual decisions whether to opt in. (Murshid Dec., Doc.

18  56, ¶ 20.) Accordingly, the Parties engaged in arms' length negotiations in light of the merits

19  of the claims that led to a fair and reasonable settlement that has now been endorsed and

20  accepted by 67 class members.  All of the relevant factors the Court should consider point

21  strongly in favor of approval of this settlement.

22     **C.   Plaintiff Johnson's service award is reasonable.**

23         The Parties have agreed that Named Plaintiff Johnson should receive a service award

24  of $1,000.00 to account for his efforts in representing the FLSA collective class and

25  obtaining a recovery on their behalf. Incentive or service payments to named plaintiffs are

26  not inappropriate in FLSA collective or other types of class actions. *See Harris v. Vector*

27  *Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, * 28 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v.*

28  *Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

1    958-69 (9th Cir. 2009)). Service awards "are intended to compensate class representatives

2    for work done on behalf of the class, to make up for financial or reputational risk undertaken

3    in bringing the action, and, sometimes, to recognize their willingness to act as a private

4    attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

5         Named Plaintiff Johnson was readily available to converse with Plaintiffs' counsel

6    throughout the investigation and filing of the lawsuit as well as during negotiations of the

7    settlement. (Murshid Dec., Doc. 56, ¶ 21.) As a result of Named Plaintiff Johnson's efforts,

8    Plaintiffs' counsel was able to make good faith estimates of uncompensated work hours at

9    issue and negotiate a resolution of claims that has benefitted the other opt-in class members.

10   Accordingly, Named Plaintiff Johnson's service award should not be impediment to the

11   Court's final approval of the settlement.

12        **D. Conclusion.**

13        As set forth above, the Parties' settlement is a compromise of bona fide disputes over

14   FLSA liability and, assuming liability were proven, potential damages available to the

15   members of the FLSA collective class. In addition, the settlement was negotiated at arms'

16   length by experienced counsel after the review of the putative class members' payroll

17   records and consideration of the factual and legal disputes that bear on the ultimate risks of

18   continued litigation. Accordingly, the settlement is fair and reasonable, and the Court should

19   enter an Order finally approving the settlement agreement and the individual releases of

20   Plaintiff and the opt-in plaintiffs and directing the clerk to enter judgment dismissing this

21   action with prejudice.  A proposed form of order is submitted herewith.

22

23        RESPECTFULLY SUBMITTED this 13th day of November, 2017.

24

25                                 HAWKS QUINDEL, SC

26

27                                 By ___*s/Summer H. Murshid*___
                                      Summer H. Murshid
28                                    **Attorneys for Plaintiff Anthony Johnson**

GONZALEZ LAW, LLC


By   _s/Dinita L. James(with permission_)
Dinita L. James
**_Attorneys for Defendant NEA Delivery, LLC_**


**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2017, I electronically transmitted  the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Dinita L. James

**Gonzalez Law, LLC**
60 E. Rio Salado Parkway, Suite 900
Tempe, AZ 85281

**_Attorneys for Defendant NEA Delivery, LLC_**


_s/ Summer H. Murshid_
Summer H. Murshid